UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CA No. 4:19-40095

HUDSON-RPM DISTRIBUTORS LLC,

      Plaintiff,

v.

BOWDITCH & DEWEY, LLP, DAVID P. GROSSI, AND TERRENCE J. BRIGGS.

      Defendants.

## COMPLAINT AND DEMAND FOR A JURY TRIAL

1. This is a legal malpractice action brought by Plaintiff, Hudson-RPM Distributors LLC, ("Hudson-RPM") against Defendants, Bowditch & Dewey, LLP ("B&D"), David P. Grossi, Esq. ("Grossi") and Terrence J. Briggs, Esq. ("Briggs") (collectively, "Defendants"), arising from patently flawed, negligent legal advice Defendants provided Hudson-RPM, which resulted in Hudson-RPM incurring multi-millions of dollars in liability to a union pension fund.

## THE PARTIES

2. Hudson-RPM is a limited liability company formed in Delaware, with its principal place of business located at 8 Cotton Road, Nashua, NH 03063.

3. Hudson-RPM has a single member, Hudson Media, Inc., which is a corporation incorporated in New Jersey with a principal place of business located at 1 Meadows Plaza, East Rutherford, New Jersey.

4. Upon information and belief, B&D is a limited liability partnership formed in Massachusetts, with its principal place of business located at 311 Main Street, Worcester, Worcester County, MA 01608.

5. Upon information and belief, Grossi is an attorney licensed to practice in the state of Massachusetts with a business address at 311 Main Street, Worcester, Worcester County, MA 01608. Grossi's residential address is currently unknown.

6. Upon information and belief, Briggs is an attorney licensed to practice in the state of Massachusetts with a business address at 311 Main Street, Worcester, Worcester County, MA 01608. Briggs's residential address is currently unknown.

## JURISDICTION AND VENUE

7. Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1332 as there exists diversity of citizenship between plaintiff and all Defendants and the amount in controversy exceeds $75,000.00.

8. Venue is proper pursuant to 28 U.S.C. § 1391(b) as Defendants are all residents of this judicial district and a substantial part of the events or omissions giving rise to the claim occurred in this this judicial district.

## INTRODUCTION

9. Hudson-RPM had an attorney-client relationship with B&D that spanned many years and during which B&D handled numerous matters for Hudson-RPM. That relationship now has been terminated as a direct result of the events described herein which created a massive liability for Hudson-RPM.

10. This action arises out of B&D's negligent advice to Hudson-RPM concerning its union workforce and its obligations vis-à-vis the union pension plan to which Hudson-RPM contributes. More specifically, Hudson-RPM sought B&D's advice concerning the effect of a proposed consolidation of its distribution operations to a New Hampshire facility and management of the reduction in its union worker hours in light of Hudson-RPM's obligations to the pension

plan in which Hudson-RPM's union labor participates. Rather than allowing Hudson-RPM to responsibly transition its labor force in a manner that would not trigger such liability, B&D's negligent legal advice resulted in Hudson-RPM incurring a more than $19 million withdrawal liability obligation to that pension plan. Because B&D's negligent advice is the direct cause of that pension obligation, B&D is liable to Hudson-RPM for the resulting damages.

## FACTUAL ALLEGATIONS APPLICABLE TO ALL COUNTS

11. Hudson-RPM is the largest distributor of magazines, books, and other types of consumer products in the Northeast and provides services to clients such as Walmart, Target, and Stop & Shop. Hudson-RPM has distribution operations located in Massachusetts, New Hampshire, Connecticut, Maine, and upstate New York.

12. Hudson-RPM maintained a longstanding attorney-client relationship with B&D, a full-service Massachusetts law firm.

13. Over the past 20 years, B&D has provided legal advice to Hudson-RPM on numerous matters spanning several legal disciplines, including corporate matters, real estate transactions and advice concerning Hudson-RPM's labor agreements and its relationships with its labor unions.

14. Recently, B&D has been representing Hudson-RPM in two employment disputes but withdrew as counsel immediately upon being put on notice of their negligent conduct as alleged in this Complaint.

15. In or around 2013, Hudson-RPM began investigating the process of relocating one of its distribution centers from Massachusetts to New Hampshire.

16. In preparation for its relocation, Hudson-RPM retained B&D seeking legal advice concerning its obligations to the New England Teamsters and Trucking Industry Pension Fund (the

"Fund"), a multiemployer pension plan to which Hudson-RPM has been a contributing employer since approximately 1999. The Fund provides retirement income to approximately 70,000 truck drivers and warehouse workers, and their beneficiaries.

17.     Specifically, Hudson-RPM sought legal advice from B&D to ensure that Hudson-RPM's transition from Massachusetts to New Hampshire, and any resulting reduction in its union workforce, was done responsibly, appropriately and in a manner that would not result in Hudson-RPM incurring withdrawal liability to the Fund, which upon information and belief is underfunded.

18.     Withdrawal liability is essentially an exit penalty imposed on withdrawing contributing employers, which allocates a share of unfunded vested benefits in a plan to the withdrawing employer. An employer will not trigger withdrawal liability if it appropriately manages any decrease in hours of union employees for which an employer contributes to the Fund.

19.     In September 2013, Hudson-RPM's representative, Ben Walter ("Walter"), contacted Grossi concerning Hudson-RPM's future planned relocation and any potential withdrawal liability to the Fund as a result of it. In particular, Walter sought advice from B&D regarding how Hudson-RPM should manage the transition of its workforce so as to ensure Hudson-RPM would not incur any withdrawal liability to the Fund.

20.     On November 1, 2013, B&D attorneys Briggs and Grossi met with Walter at B&D's offices to discuss Hudson-RPM's anticipated relocation of the Worcester, MA distribution center and the multi-year analysis of past and estimated future worker hours that must be performed to calculate when potential withdrawal liability would be triggered as a result of a decrease in worker hours.

21. Based on Defendants' direction and advice, Hudson-RPM created a spreadsheet to assist in calculating when withdrawal liability to the Fund would be triggered and sent it to Briggs and Grossi for review and comment, as they had requested.

22. On information and belief, one or more of Defendants did, in fact, receive and review Walter's spreadsheet, which they had requested.

23. Despite their review of the withdrawal spreadsheet, at no point did Briggs, Grossi or anyone on B&D's behalf advise Hudson-RPM that the formula Walter was using was incorrect or that the spreadsheet was inaccurate.

24. As a result, for many years following the meeting and Briggs, Grossi and B&D's advice and counsel concerning the spreadsheet, Hudson-RPM meticulously relied on and abided by the formula B&D provided and the calculations set forth in the spreadsheet.  Indeed, Hudson-RPM continually assessed its labor force to ensure compliance with the calculation used in the spreadsheet specifically to ensure that any withdrawal liability would not be triggered and even hired union workers based on the formula and calculations used in the spreadsheet so as to not incur withdrawal liability.

25. Defendants' advice and counsel, however, were negligent and they utterly failed in their duty to properly represent Hudson-RPM and protect its interests.

26. On March 28, 2019, Hudson-RPM received a letter from the Fund, assessing Hudson-RPM for withdrawal liability under the Employee Retirement Income Security Act of 1974, as amended by the Multiemployer Pension Plan Amendment Act of 1980.

27. The March 28, 2019 letter put Hudson-RPM on notice of an alleged partial withdrawal from the Fund by Hudson-RPM due to a 70% or more decline in contribution base units during three consecutive plan years.

28.     The Fund has calculated Hudson-RPM's liability to be approximately **$19,948,714.00** for a partial withdrawal it alleges was effected during the year ending September 30, 2017, and based on Hudson-RPM's employee hours during the three-year test period preceding September 30, 2017.

29.     The Fund's calculation uses a formula to determine when withdrawal liability was triggered. This formula—which is set forth in the Employee Retirement Income Security Act of 1974 ("ERISA")—diverges significantly and in multiple ways from the formula Defendants advised and counseled Hudson-RPM to use, as a result of Defendants' erroneous advice and negligent representation.

30.     Hudson-RPM is obviously alarmed and appalled to discover that it is facing the very liability it worked carefully not to trigger and on which it specifically sought Defendants' legal advice to prevent; a liability that is solely due to Defendants' patent misconduct in representing Hudson-RPM.

31.     Since being put on notice of their tortious conduct, Defendants have done nothing to attempt to ameliorate the harm they have caused to their former client, Hudson-RPM.

32.     Hudson-RPM is currently evaluating its options regarding a potential challenge of the Fund's determinations but has begun making monthly payments to the Fund in the amount of $218,944.00, as required by law.

33.     While the Fund already has assessed a withdrawal liability in the amount of $19,948,714.00, that amount only covers the three-year test period ending on September 30, 2017. To the extent the Fund seeks to assess any additional penalties, liability for those amounts also will have resulted from B&D's malpractice and misconduct in representing Hudson-RPM.

59591/0001-17365449v10

34.     As a result of B&D's failure to provide Hudson-RPM with proper and appropriate representation concerning the consolidation of its union workforce and potential withdrawal liability as a result of a decrease in union worker hours, including failing to provide Hudson-RPM the correct formula to calculate the point at which withdrawal liability would be triggered due to a decrease in worker hours, the Fund is now alleging a partial withdrawal from the Fund was triggered and that Hudson-RPM is liable for more than $19 million in withdrawal liability to the Fund.

### FIRST COUNT
**(Negligence - Legal Malpractice)**
(As to B&D, Grossi, and Briggs)

35.     Hudson-RPM repeats and realleges the allegations contained in the preceding paragraphs as if stated fully herein.

36.     Hudson-RPM had an attorney-client relationship with Defendants.

37.     Hudson-RPM retained B&D, and specifically Grossi and Briggs, to represent it and provide it advice and counsel concerning its relocation, to determine whether it would incur any withdrawal liability to the Fund if it reduced its union employees, and to provide and apply the correct formula to calculate the point at which withdrawal liability would be triggered so that Hudson-RPM could appropriately manage its relocation and workforce without triggering withdrawal liability to the Fund.

38.     In its representation of Hudson-RPM, Defendants owed Hudson-RPM a duty to use reasonable care and skill, which they breached.

39.     In providing legal advice and representation to Hudson-RPM, Defendants failed to exercise the degree of skill, care, and diligence employed by the average qualified attorney providing comparable legal services.

40. Specifically, Defendants negligently failed to provide Hudson-RPM with accurate, proper and appropriate advice concerning its relocation and any potential withdrawal liability and negligently failed to provide Hudson-RPM the correct formula, which is set forth in the ERISA statute, to calculate the point at which withdrawal liability would be triggered.

41. As a direct and proximate result of their negligence and breach of the duties Defendants owed to Hudson-RPM, Hudson-RPM has suffered significant economic and consequential damages, including but not limited to all costs assessed or to be assessed by the Fund, including the partial withdrawal liability already imposed by the Fund in an amount exceeding $19 million, as well as attorney's fees, and costs associated with this suit.

42. Hudson-RPM did not discover, nor should it reasonably have been expected to discover that it suffered harm as a result of Defendants' conduct until March 28, 2019.

WHEREFORE, Hudson-RPM demands judgment against B&D, Grossi, and Briggs for damages in an amount to be determined by the Honorable Court and for interest, costs and attorney's fees and for such other relief as the Court deems just and proper.

**SECOND COUNT**
**(Breach of Contract)**
(As to B&D)

43. Hudson-RPM repeats and realleges the allegations contained in the preceding paragraphs as if stated fully herein.

44. Hudson-RPM entered into an agreement whereby B&D agreed to perform legal services, advising services, and other services for it for valuable consideration.

45. B&D represented that it was qualified to accept the tasks it agreed to undertake including advising Hudson-RPM as to its relocation and appropriate management of any union workforce reductions, how to avoid and not incur withdrawal liability to the Fund, and how to use

and apply the correct formula to calculate the point at which withdrawal liability would be triggered so that such liability could not be triggered.

46. Per the parties' agreement, B&D was required to exercise at least the degree of skill, care, and diligence exercised by the average qualified attorney and advisor providing comparable services.

47. B&D breached the agreement by failing to competently represent Hudson-RPM with regard to its relocation and its stated goal of managing the relocation and workforce in order not to trigger any withdrawal liability to the Fund.

48. As a direct and proximate result of its breach, Hudson-RPM suffered significant economic and consequential damages, including but not limited to costs resulting from the Fund's determination that Hudson-RPM has incurred partial withdrawal liability to the Fund, as well as attorney's fees, and costs associated with this suit.

49. Hudson-RPM did not discover, nor should it reasonably have been expected to discover, that it suffered harm as a result of B&D's conduct until March 28, 2019.

WHEREFORE, Hudson-RPM demands judgment against B&D for damages in an amount to be determined by the Honorable Court and for interest, costs and attorney's fees and for such other relief as the Court deems just and proper.

### THIRD COUNT
**(Breach of Fiduciary Duty)**
(As to B&D, Grossi, and Briggs)

50. Hudson-RPM repeats and realleges the allegations contained in the preceding paragraphs as if stated fully herein.

51. B&D, Grossi, and Briggs, by virtue of undertaking Hudson-RPM's representation, entered into a fiduciary relationship with Hudson-RPM and owed fiduciary duties to it.

59591/0001-17365449v10

52.     Hudson-RPM put its trust and confidence in Defendants, including but not limited to relying on Defendants to serve its interests above its own, to bill it accurately and fairly for their services, and to advise and communicate with it to protect Hudson-RPM's interests.

53.     Defendants violated their fiduciary duties, including, but not limited to, by failing to protect Hudson-RPM's interests, failing to communicate with Hudson-RPM and failing to exercise the degree of skill, care, and diligence exercised by the average qualified attorney providing comparable services.

54.     As a direct and proximate result of the violation of the fiduciary duties owed to Hudson-RPM, Hudson-RPM suffered significant economic and consequential damages, including but not limited to costs resulting from the Fund's assessment of partial withdrawal liability against Hudson-RPM, as well as attorney's fees, and costs associated with this suit.

55.     Hudson-RPM did not discover, nor should it have reasonably been expected to discover, that it suffered harm as a result of B&D, Grossi, and Briggs' conduct until March 28, 2019.

WHEREFORE, Hudson-RPM demands judgment against B&D, Grossi, and Briggs for damages in an amount to be determined by the Honorable Court and for interest, costs and attorney's fees and for such other relief as the Court deems just and proper.

## FORTH COUNT
**(Indemnification)**
(As to B&D, Grossi, and Briggs)

56.     Hudson-RPM repeats and realleges the allegations contained in the preceding paragraphs as if stated fully herein.

57.     Hudson-RPM relied on the advice and counsel of B&D, Grossi, and Briggs as to its relocation and appropriate management of the reduction of its union workforce, how to avoid

and not incur withdrawal liability to the Fund, and how to use and apply the correct formula to calculate the point at which withdrawal liability would be triggered so that such liability could not be triggered.

58. Hudson-RPM is entitled to common law indemnification from B&D, Grossi, and Briggs for its losses resulting from Defendants' conduct.

59. Defendants are liable to Hudson-RPM for its losses, including but not limited to all losses paid or to be paid to the Fund.

WHEREFORE, Hudson-RPM demands judgment against B&D, Grossi, and Briggs for damages in an amount to be determined by the Honorable Court and for interest, costs and attorney's fees and for such other relief as the Court deems just and proper.

## FIFTH COUNT
*(respondeat superior)*

60. Hudson-RPM repeats and realleges the allegations contained in the preceding paragraphs as if stated fully herein.

61. B&D is responsible for and liable for all of the negligent and otherwise tortious acts and omissions committed by Grossi, Briggs and any of their other employees, agents and servants under the doctrine of *respondeat superior* and related principles of law.

## JURY DEMAND

Hudson-RPM demands a trial by jury on all issues so triable.

JULY 23, 2019                                  **HUDSON-RPM DISTRIBUTORS LLC**
                                               *By its attorneys,*
                                               By:   /s/ Russell X. Pollock
                                               **RUSSELL X. POLLOCK, BBO# 564883**
                                               Bergstresser & Pollock PC
                                               52 Temple Place
                                               Boston, MA 02111
                                               (617) 682-9211 / (617) 451-1070 - FAX
                                               russ@bergstresser.com

59591/0001-17365449v10

**COLE SCHOTZ P.C.**
Warren A. Usatine, Esq.
Wendy F. Klein, Esq.
Brian P. Matthews, Esq.
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, New Jersey 07602-0800
201-489-3000 / 201-489-1536 Facsimile

12