UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HUDSON-RPM DISTRIBUTORS, LLC<br>Plaintiff,<br><br>v.<br><br>BOWDITCH & DEWEY, LLP, ET. AL.,<br><br>Defendants/Third-Party Plaintiff, | Case No.  4:19-40095 |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO COMPEL A PRIVILEGE LOG**

In this action, Hudson-RPM Distributors, LLC ("Hudson") contends that it incurred over $19M in withdrawal liability in 2019 after purportedly relying for six years on advice provided by the Defendants ("B&D") in 2013.  Both the existence and reasonableness of Hudson's claim to six years of exclusive and silent reliance is contested.

In discovery, B&D requested Hudson provide documents concerning: (1) other professionals who Hudson retained to advise it on withdrawal liability *before* the liability was incurred and when it was purportedly relying on B&D; and (2) the mitigation efforts taken by Hudson *after* the liability was incurred.  These documents are relevant to the material issues of duty, exclusive reliance, causation, comparative negligence, and statute of limitations.  Hudson possesses, but refuses to produce responsive documents.  After multiple extensions, Hudson has recently repudiated a March 2020 commitment to produce a privilege log in support of its claims of privilege.  As grounds for reneging on its prior commitment, Hudson now contends that the few hours it will take to prepare a privilege log is "not proportional" to the needs of this litigation seeking nearly $20M.

Hudson should be ordered to comply with its discovery obligations.  Without a privilege log concerning these four requests, B&D will be unable to assess Hudson's claim of exclusive reliance and the viability of alleged privileges.

## **FACTUAL BACKGROUND**

Hudson contends that in 2013, it retained B&D to assist it with the relocation of one of its facilities from Massachusetts to New Hampshire to "ensure" that it did not incur any withdrawal liability.  ECF No. 1, ¶¶ 17, 19.  In connection with this relocation, B&D purportedly provided it with negligent advice on how to calculate its withdrawal liability, which Hudson purportedly "meticulously relied" upon for the next six years until it unknowingly triggered a withdrawal liability in excess of $19M in 2019.  Id. ¶¶ 21, 24, 40.

During discovery, B&D served discovery that was targeted at assessing Hudson's claim of exclusive reliance.  Specifically, B&D requested:

- "All engagement letters, contracts, and/or agreements between Hudson-RPM and any any actuary, investment banker, lawyer, and/or other professional between January 1, 2013 and March 27, 2019 concerning withdrawal liability;" and

- "All communications, emails, letters, reports, memoranda, and/or other documents between Hudson-RPM and any accounting firm, certified public accountant, lawyer, investment banker, actuary, and/or other professional concerning withdrawal liability between January 1, 2013 and March 28, 2019."

(Ex. 1, Hudson's Responses to Doc. Req. Nos. 26-27).  On February 10, 2020, Hudson responded to these requests, marked blank bates numbered pages with a notation that they had been withheld as privileged, and failed to produce a corresponding privilege log.  Id.  With respect to the requests above, Hudson objected to them on the basis that they seek "information protected from disclosure by the attorney-client privilege and/or the work product doctrine."  Id.[1]

---

[1] In full, both responses read: "Hudson-RPM objects to this Request to the extent it seeks information protected from disclosure by the attorney-client privilege and/or the work product doctrine and to the extent that it seeks documents

On March 11, 2020, the parties conducted a Rule 7.1 Conference whereby Hudson agreed to produce a privilege log for the document withheld on the basis of privilege.  Hudson never honored its promise in whole or in part and recently repudiated it.

On April 24, 2020, B&D served a Second Request for Documents on Hudson after learning from the pension fund, not Hudson, that Hudson had retained Littler Mendelson, P.C. ("Littler") on the issue of withdrawal liability in 2018.  (Ex. 2, Hudson's Responses to Doc. Requests).  The retention contradicted Hudson's allegation that it was supposedly relying exclusively on B&D until it was shocked to learn of a withdrawal liability in 2019.  The Requests sought documents concerning Hudson's communications with Littler *before* withdrawal liability was assessed to test issues such as exclusive reliance and *after* the assessment to determine if Hudson exercised reasonable efforts to mitigates its alleged damages.  (Ex. 2, Hudson's Responses to Doc. Req. Nos. 41-42).  These requests requested:

- "All engagement letters, contracts, correspondence, letters, emails, memos, reports, and other documents concerning the services provided to you by Littler Mendelson, P.C., *before* March 25, 2019;" and

- "All engagement letters, contracts, correspondence, letters, emails, memos, reports, and other documents concerning the services provided to you by Littler Mendelson, P.C., *on or after* March 25, 2019."

(Ex. 2, Hudson's Responses to Doc. Req. Nos. 41-42).  On June 5, 2020, Hudson responded to B&D's Second Request for the Production of Documents and again asserted that it was withholding documents on privilege without providing a corresponding privilege log.  Id.[2]

---

irrelevant to this matter.  Subject to and without waiving the foregoing objections, Hudson-RPM will produce all responsive, non-privileged documents.  Hudson-RPM reserves the right to supplement its response."

[2] The response to Request No. 41 reads: "Hudson-RPM objects to the request as unduly burdensome as it seeks documents that are already in Defendants' possession.  *See* Engagement Letter (the "Engagement Letter") produced in response to Defendants' Subpoena to Littler Mendelson, P.C. ("Littler").  Hudson-RPM further objects to this Request to the extent it seeks information protected from disclosure by the attorney-client privilege and/or the work product doctrine.  Otherwise, Hudson-RPM objects to this request to the extent that it is not proportional to the needs of the case.  Hudson-RPM will not produce such irrelevant documents and is withholding documents on the basis of the above-referenced objections."  The response to Request No. 42 reads: "Hudson-RPM objects to this request as

3

On June 15, 2020, the parties again discussed the issue of a privilege log.  Hudson admitted that it was withholding documents concerning Littler.  Hudson, however, was not agreeable to producing a privilege log unless B&D reduced the scope of its discovery requests because a log is "not proportional to the needs of this case."  (Ex. 3, Email from Hudson's Counsel, dated June 16, 2020) (claiming that B&D's attempt to test the various liability issues relative to exclusive reliance and causation on an alleged claim of $19M+ was a "distracting side-show[].")。

## ARGUMENT

It is well established that a party who withholds information on the basis of privilege <u>must</u> comply with Fed. R. Civ. P. 26(b)(5), which provides:

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
>
> > **(i)** expressly make the claim; and
> >
> > **(ii)** describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

---

unduly burdensome as it seeks documents that are already in Defendants' possession.  *See* Documents produced in response to Defendants' Subpoena to Littler.  Hudson-RPM further objects to this Request to the extent it seeks information protected from disclosure by the attorney-client privilege and/or the work product doctrine.  Otherwise, Hudson-RPM objects to this request to the extent that it is not relevant to any of the Plaintiff's claims or Defendants' defenses and is not proportional to the needs of the case.  Furthermore, to the extent that the so-called 'at-issue waiver' may be implicated in this matter, such waiver is not 'tantamount to a blanket waiver of the entire attorney-client privilege in this case.' *Darius v. Boston*, 741 N.E.2d 52m 58 (Mass. 2001) (noting that, as a general principle, a litigant may implicitly waive the attorney client privilege, 'by injecting certain claims or defenses into a case.') (citing *Greater Newburyport Clamshell Alliance v. Public Serv. Co. of N.H.*, 838 F.2d 13 (1st Cir. 1988)).  The 'at issue waiver' is only a 'limited waiver of the privilege with respect to what has been put 'at issue.'' *Id.*  As set forth in responses to Defendants' Interrogatory No. 4, beginning in January 2018, Littler Mendelson was retained by Hudson-RPM and Hudson News Distributors, LLC to begin assessing potential withdrawal liability if either entity were to completely withdraw from any pension fund to which they contribute.  Littler was not retained to and did not undertake any review of Hudson-RPM's workforce or the potential for Hudson-RPM to effect a partial withdrawal from the Fund.  It was not until March 28, 2019, following Hudson-RPM's receipt of notice from the Fund information it that a partial withdrawal had occurred for the plan year ending September 30, 2018, and imposing partial withdrawal liability against Hudson-RPM, that Littler was engaged to determine how best to address the liability and Defendants' negligent legal advice.  Accordingly, Hudson-RPM may agree to produce documents related to Littler's engagement to address the results of the negligent legal advice and counsel provided by Defendants.  Any such production will be made following an agreement between the parties relevant to the treatment of such documents that would otherwise be privileged."

Fed. R. Civ. P. 26(b)(5)(A)(i-ii) (emphasis added).  The universally accepted way of complying with Rule 26's mandate is with a privilege log.  See Bacchi v. Massachusetts Mut. Life Ins. Co., 110 F. Supp. 3d 270, 274 (D. Mass. 2015) ("Generally, a privilege claim is made by serving a privilege log that separately lists each document, specifies who created the document and all recipients, and concisely states the basis for the claim of privilege."); Corvello v. New England Gas Co., Inc., 243 F.R.D. 28, 33 (D.R.I. 2007) ("Although the federal rules do not specifically address the subject, the 'universally accepted means' of claiming that requested documents are privileged is the production of a privilege log.").  "[P]rivilege logs do not need to be precise to the point of pedantry.  A party asserting a claim of privilege is merely expected to do the best that he reasonably can to describe the materials to which his claim adheres." Bryan Corp. v. Chemwerth, Inc., 296 F.R.D. 31, 41 (D. Mass. 2013) (internal quotation marks and quotation omitted).

A privilege log is so important that the refusal to provide one may be deemed a waiver of the underlying privileges, especially in cases, such as here, where the failure to provide a privilege log was not an oversight.  See In re Grand Jury Subpoena, 274 F.3d 563, 576 (1st Cir.2001) ("A party that fails to submit a privilege log is deemed to waive the underlying privilege claim."); The Manitowoc Co., Inc. v. Kachmer, No. 14-CV-9271, 2016 WL 2644857, at 4, n. 5 (N.D. Ill. May 10, 2016) (finding a waiver of privilege where party failed to list documents it did not produce in privilege log as this went beyond a good faith oversight).

It is undisputed that Hudson has not complied with Rule 26.  It has not produced a privilege log or information sufficient to assess any of the claimed privileges with respect to the documents it has withheld from Request Nos. 26-27, and 41-42.[3]  Without a log, B&D is wholly unable to

---

[3] It is wholly unclear whether Hudson-RPM is further ignoring its discovery obligations by withholding documents on the basis of privilege with respect to any of the other requests or with respect to any of the subpoenas it has answered on behalf of various non-parties to this litigation.

assess the claimed privileges and determine whether discoverable information has been withheld. Even if the privileges were proper, the very existence of a privilege log itemizing numerous conferences between Hudson and Littler on the issue of withdrawal liability would undercut Hudson's claim that it exclusively relied on B&D concerning withdrawal liability and was unduly surprised by the assessment in March of 2019.

A $19+ million claim is a large and serious one.  A proportionate defense requires material issues to be thoroughly investigated.  Where the judiciary has already determined that Rule 26 applies to diversity cases claiming only $75,000 in damages, it would be untenable to argue that it is disproportionate to a claim alleging nearly $20M.  See Fed. R. Civ. P. 26(b)(5).  Even if the Court indulged a claim that a privilege log would impose some herculean burden, Hudson has offered no evidence of such a burden beyond its conclusory statements to support such a finding. See In re New England Compounding Pharm. Inc., 2013 WL 6058483, at *6 (D.Mass. Nov. 13, 2013) ("[A] party cannot rely on the mere assertion that compliance would be burdensome and onerous without showing the manner and extent of the burden and the injurious consequences of insisting upon compliance.") (quotation marks omitted) (collecting cases); see also Assoc. of Am. Physicians and Surgeons, Inc. v. Clinton, 837 F.Supp. 454, 458 n. 2 (D.D.C.1993) ("Defendants' burdensome argument is categorically rejected. The court does not accept such arguments without specific estimates of staff hours needed to comply, and defendants submitted no such estimates.").

## CONCLUSION

For the foregoing reasons, B&D respectfully requests that this Court orders Hudson to comply with Rule 26 by providing a privilege log with respect to its responses to Request Nos. 26-27, and 41-42.  Having chose to assert a $19 million claim, Hudson cannot claim that it is too much trouble to permit B&D to mount a defense.

Respectfully submitted,

The Defendants,
Bowditch & Dewey, LLP, David P. Grossi,
and Terrance J. Briggs
By their attorneys


 /s/ William R. Covino
George A. Berman, Esq., BBO #040200
William R. Covino, Esq. BBO #673474
Christina T.E. Staffiere, Esq. BBO #699041
PEABODY & ARNOLD LLP
600 Atlantic Avenue
Boston, MA  02210
(617) 951-2100
gberman@peabodyarnold.com
wcovino@peabodyarnold.com
cstaffiere@peabodyarnold.com

## CERTIFICATE OF SERVICE

    I, William R. Covino, hereby certify that a true copy of the foregoing document was filed electronically with the Federal Court's electronic filing system on this 23rd day of June 2020.


 /s/ William R. Covino
William R. Covino, Esq.

1771754_1
16364-204746